UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

BRUCE W. BOCKELMANN AND JOAN L.     CASE NO.: 9:21-cv-81972-RS
BOCKELMANN

    Plaintiffs,

v.

USAA CASUALTY INSURANCE COMPANY

    Defendant.
_____/

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiffs, BRUCE and JOAN BOCKELMANN ("BOCKELMANN"), hereby respectfully submit this memorandum in opposition to the motion for summary judgment filed by Defendant, USAA CASUALTY INSURANCE COMPANY ("USAA"), [D.E. 34], and state:

**Introduction**

The record evidence is clear – the foundation of Plaintiffs' insured home, and the structural backfill used to construct the home and support the home's foundation, have been damaged by water and bacteria leaking from the home's failed plumbing system. USAA, however, fails even to acknowledge this record evidence. Instead, USAA ellipses relevant language out of its own Policy. Incredibly, Defendant also insists that its Policy does not cover dwelling foundations.[1] The

---

[1] As part of one of its many advertising campaigns, USAA urges its insureds to "maintain[] enough coverage to rebuild your home." *See* "Protect Yourself With Proper Coverages," https://mobile.usaa.com/inet/wc/advice-insurance-protect-yourself-with-proper-coverage. Nowhere does USAA say that homes will have to rebuilt without foundations – presumably with dirt floors.

USAA Policy in fact covers Plaintiffs' "Dwelling" – including its foundation. Moreover, despite Defendant's twice repeated use of ellipses to keep the Policy language out of its Motion, property covered by the Policy also includes: "***Materials*** and supplies located on or next to the 'residence premises' ***used to construct***, alter or repair ***the dwelling*** or other structures on the 'residence premises.'" *See* Plaintiffs' Statement of Material Facts, ¶ 3 (emphasis added). In other words, the structural backfill used to construct the home and support the home's foundation, is also covered. For these and other reasons detailed below, Defendant's motion for summary judgment must be denied.

## Damage to Plaintiffs' Home

Plaintiffs both testified that their home plumbing system has repeatedly suffered from bouts of slow draining. They do acknowledge that they did not see floors and cabinets in the home being damaged by water or sewage. When they became concerned about the continued plumbing problems, however, they retained a plumber who supervised a videoscope inspection of the plumbing system. Plaintiffs' expert plumbing witness, Edward Joe Jaremko, provided a Plumbing Report setting out extensive damage to the home. This includes Mr. Jaremko's opinion that:

> ***The cast iron pipes throughout are severely thinned and deteriorated***. There are broken pieces of cast which illustrates the poor condition of the system. ***There is also evidence of sand which is indicative of broken pipe and damaged structural backfill. There are also small holes and cracks to the system***.
>
> . . .
>
> ***Breaks, holes, cracks and bottomed out pipe allow for wastewater to escape the pipes and rise through slab penetrations*** causing water damage to walls, floors, cabinets, etc. ***This often results in back-pitched or collapsed pipes as the structural backfill that supports them becomes damaged by being sucked into the system or washed***

> *away from underneath of it*. . . .
>
> . . .
>
> Due to the condition of the sanitary plumbing lines throughout the residence, *it is our professional opinion that the entire cast iron system be removed and replaced to PVC*. . . . *The existing system has failed* as the cast iron pipes are 50 years old . . . and have caused drainage problems and damage. The cast iron will only continue to deteriorate which is why replacement is necessary. *Partial or sectional repairs are not an option because it is not a true fix and problems will persist. Complete replacement through the slab is the most reasonable repair to make to prevent future issues. This also allows for the removal of sewage-contaminated structural backfill and the restoration of damaged structural backfill*.

*See* Plumbing Report at 1-2 (emphasis added) [D.E. 38-3, Plaintiffs' Notice of Filing, Exhibit 3-C]. Mr. Jaremko also provided a Camera Inspection Report, which describes multiple instances of "broken and back-pitched pipe and damaged structural backfill" throughout the home's plumbing system. *See* Camera Inspection Report [D.E. 38-3, Plaintiffs' Notice of Filing Exhibit 3-B].

Mr. Jaremko has been a master plumber for over 30 years. *See* Jaremko Deposition, Vol. II, at 10:8-14 [D.E. 38-2, Plaintiffs' Notice of Filing Exhibit 2]. Mr. Jaremko's testimony is clear – "the plumbing system has failed and is in need of replacement." *See id.* at p. 48:2-3. The failed plumbing system has numerous holes, collapsed pipes and deteriorated and missing sections of pipe. *See id* at pages 74 - 80. The water and sewage escaping from the plumbing has damaged the engineered structural backfill, which is visible inside of the plumbing pipes. *See id* at 80 (sand in the pipe "is indicative of broken pipe and damaged structural backfill"); *id*. at 82 ("broken pieces of pipe mixed with structural backfill"); *id*. at 92-93 ("structural backfill inside the line" the "belly holding water . . . is an indication that this line is breached").

Significantly Mr. Jaremko also testified that: "*It's a standard building practice to use engineered structural fill as a building component in order to support the plumbing*" system.

3

*See id* at pages 80:24 – 81:8. Mr. Jaremko also holds a certificate for "water damage restoration and applied microbial remediation." *See id*. at 17. He also conducted moisture readings throughout the home. He testified that the foundation slab: "is absorbing the water leaking from the pipes," there is "bacteria in this water . . .. It's what we consider Category 2 and Category sewage pathogen water, grossly contaminated." And the "bacteria is in the slab." *See id*. at 113.

### The Policy Covers Damage to the Home's Foundation and Structural Backfill

As noted above, Defendant's Motion refuses to acknowledge the relevant the Policy coverage. The Policy has a section entitled "Property We Cover." There, covered property is expressly defined to include:

> SECTION I – PROPERTY WE COVER
> COVERAGE A – DWELLING PROTECTION
>
> We cover:
>
> 1. The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling.
>
> 2. "***Materials*** and supplies located on or next to the 'residence premises' ***used to construct***, alter or repair ***the dwelling*** or other structures on the 'residence premises.'"

*See* HO-3RFL (09 -16), Section I —Property We Cover, at Page 3 of 34 (emphasis added).

Defendant does acknowledge that the Policy's coverage provisions provide in part:

> SECTION I – LOSSES WE COVER
> COVERAGE A – DWELLING PROTECTION AND
> COVERAGE B – OTHER STRUCTURES PROTECTION
> COVERAGE
>
> ***We insure against sudden and accidental, direct physical loss to tangible property*** described in PROPERTY WE COVER – COVERAGES A and B ***unless excluded*** in SECTION I – LOSSES WE DO NOT COVER.

*See* Defendant's Statement of Material Facts, ¶ 3 at page 2. Under Florida law, homeowner's

4

policies containing similar language are deemed to be "all-risk" policies. *See Jones v. Federated Nat'l Ins. Co.*, 235 So. 3d 936, 940 (Fla. 4th DCA 2018) ("all risk" policy "insure[d] against risk of direct loss . . . only if that loss is a physical loss to property," and listed "the specific types of exclusions to that coverage."). Under "all risk" policies:

> ***Unless the policy expressly excludes the loss from coverage***, this type of policy provides coverage for all fortuitous loss or damage other than that resulting from willful misconduct or fraudulent acts. . . .
>
> [*T*]*he insurer is held responsible for clearly setting forth what damages are excluded from coverage under the terms of the policy*.

*Fayad v. Clarendon Nat. Ins. Co.*, 899 So. 2d 1082, 1085–86 (Fla. 2005) (emphasis added, citations omitted). As a result, in all-risk policies "construction is governed by the language of the exclusionary provisions." *Sebo v. Am. Home Assurance Co., Inc.*, 208 So. 3d 694, 697 (Fla. 2016).

Florida courts have repeatedly found that homeowner's insurance policies with similar provisions provide coverage for damaged foundations. In the seminal case of *Hartford Acc. & Indem. Co. v. Phelps*, 294 So. 2d 362 (Fla. 1st DCA 1974), the court held, under a policy with provisions very similar to Defendant's current Policy, there was coverage when the Phelps "home suffered ***damage resulting from an underground leak in a water pipe under the house beneath the concrete slab floor***. The leak washed out a hole causing damage and ***upon the water being pumped from beneath the house in repairing it, the house settled causing additional damage***." *See Phelps*, 294 So. 2d at 363 (emphasis added).

More recently, and again construing policies nearly to USAA's, courts have found coverage for structural components of buildings such as Plaintiffs' damaged structural backfill here. In a very recent decision, *Stone v. Universal Property & Casualty Insurance Co.*, a Palm Beach Circuit Court judge rejected arguments nearly identical to those made by USAA here. The *Stone* court summarized its ruling as follows:

5

> Defendant's sole argument on summary judgment is that Plaintiffs *did not present evidence that their dwelling suffered a "direct physical loss"* as required to trigger coverage under the policy. ***The Court disagrees***. ***Plaintiffs presented evidence*** in the form of an expert opinion that there was ***direct physical loss to multiple elements of Plaintiffs' dwelling, including*** the interior, ***the concrete slab, and the structural backfill***.

*See Stone*, Case No. 50-2020-CA-006675, at 1-2 (emphasis added).[2] The *Stone* court also expressly rejected the argument the policy there did not provide coverage for structural backfill, stating: "the policy is not so narrow." *Id*. at 11. The court then addressed a coverage provision identical to that in USAA's Policy, stating:

> The policy covers "direct physical loss" to the Plaintiffs' "dwelling." ***Nothing in the description of "dwelling" limits that term to the interior*** of a property, ***nor does that term exclude the structural backfill***. Rather, ***the term "dwelling" broadly includes "structures attached to the dwelling" and "materials and supplies located on or next to the `residence premises' used to construct, alter, or repair the dwelling or other structures on the `residence premises.'"*** The "residence premises" also includes structures and grounds.

*Id*. at 12 (emphasis added, internal citation excluded); *see also Saelens v. St. Johns Insurance Co*. at 5, Case No. 18-CA-005891, Lee County, FL ("***structural fill is a material utilized in the construction of the home***, and as such the ***structural fill is insured property under the Policy***.") (emphasis added)[3]; *Gilliland v. Citizens Property Ins. Corp*., Case No. 2019-011545-CA-01, Miami-Dade County ("The uncontroverted ***record evidence is that***: (a) the cast iron plumbing pipe in Plaintiff's home laying on backfill; and (b) the b***ackfill is being damaged by water escaping from holes in the pipe***."); *id*. (granting summary judgment as to coverage "***for all work***

---

[2] *See* [D.E. 37-1] (copy attached as Exhibit "1" to Plaintiffs' Notice of Filing and Request to Take Judicial Notice [D.E. 37]).

[3] *See* Order Denying Defendant's Motion for Partial Summary Judgment , etc. [[D.E. 37-4] (Exhibit "4" to Plaintiffs' Notice of Filing and Request to Take Judicial Notice [D.E. 37]).

*that reasonably and necessarily has to be done to access and tear out the plumbing pipe that is damaging the backfill and to thereafter cover up the pipes*.") (emphasis added)[4]; *Moreno v. First Protective Insurance Co.*, at 2 & n.6, Case No. 2019-030433-CA-01, Miami-Dade County, FL ("One of the "structural components" of the home is backfill, which is a "material used to support the slab, to support the plumbing.").[5]

Separately, the USAA Policy also contains exclusions for damage to "foundations." These provisions include:

> **LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION AND OTHER STRUCTURES PROTECTION.**
>
> 1.   Unless otherwise stated in 3. below ***we do not insure for damage consisting of or caused by any of the following***, regardless of whether the event or damage occurs suddenly or gradually, involves isolated or widespread damage, or occurs as a result of any combination of these to produce the loss.
>
> . . .
>
> b. ***Freezing, thawing, pressure or weight of water or ice***, whether driven by wind or not, ***to a***:
>
> > (1)  Swimming pool, hot tub, or spa, including their filtration and circulation system; or
> > (2)  Fence, pavement, patio; or
> > (3)  ***Foundation***, retaining wall or bulkhead; or
> > (4)  Pier, wharf or dock.
>
> . . .
>
> k. ***Settling, cracking, shrinking, bulging or expansion of*** pavements, patios, ***foundations***, walls, ***floors***, roofs or ceilings;

---

[4]   *See* [[D.E. 37-2] (Exhibit "2" to Plaintiffs' Notice of Filing and Request to Take Judicial Notice [D.E. 37]).

[5]   *See* Order on Plaintiff's Motion for Summary Judgment [[D.E. 37-3] (Exhibit "3" to Plaintiffs' Notice of Filing and Request to Take Judicial Notice [D.E. 37]).

*See* Plaintiffs' Statement of Material Facts, ¶ 4 at pages 3-4 (emphasis added). Plainly the coverage exclusions for "foundations" quoted above would not be necessary if "foundations" were not covered property under the Policy.

### **The Policy's Coverage for Water Escaping from the Plumbing Sustem**

The Policy contains an exclusion for damage caused by "wear, tear [and] deterioration," it also contains an express exception that provides coverage where, as here, deterioration leads to water damage from a plumbing system.

> 1. Unless otherwise stated in 3. below we do not insure for damage consisting of or caused by any of the following . . ..
>
> \*\*\*
>
> f. ***Wear and tear***, marring, ***deterioration***.
>
> \*\*\*
>
> 2. If items 1.f. [wear and tear] through 1.p. above ***cause water damage*** which is not otherwise excluded, ***we cover the resulting water damage***, ***including the cost of tearing out and replacing any part of a building necessary to repair a plumbing***, heating, air conditioning, or automatic fire protective sprinkler ***system*** or household appliance. We do not cover loss to the system or appliance from which this water escaped.

*See* Plaintiffs' Statement of Material Facts, ¶ 25 at pages 6-7 (emphasis added).

The wear and tear exclusion and corresponding exception for "water damage" in the Policy at issue here is effectively identical to clauses considered by the court in *Cheetham v. S. Oak Ins. Co.*, 114 So. 3d 257 (Fla. 3d DCA 2013). Like the Policy here, the Southern Oak policy in *Cheetham* contained an exception to exclusions for damage caused by "accidental discharge or overflow of water." The exception to the Cheetham policy also provided coverage for water damage to covered property, including "the cost to tear out and replace any part of a building, or other structure, on the 'residence premises' . . . when necessary to repair the system." *Id*. at 259.

8

The effect of the exception the exclusion at issue in *Cheetham* was to convert "an 'accidental discharge' of water from within a plumbing system caused by deterioration" into a covered loss, "[u]nless the loss is otherwise excluded." *See id.* at 263; *see also Liebel v. Nationwide Ins. Co.*, 22 So. 3d 111, 114 & 117 (Fla. 4th DCA 2009) (same).

### The Policy's Tear-Out Coverage

The Policy's "tear-out" coverage, provided through the exception to the wear and tear exclusion, is significant. A recent federal district court decision described the scope of a homeowner's policy tear out coverage as follows:

> ***Examples of '*tear out*' costs include***, but are not limited to, the ***cost to tear out and repair flooring and concrete***, the ***cost to repaint walls and ceilings***, and the ***cost to tear out and repair cabinets***.

*Floyd v. GeoVera Specialty Ins. Co.*, 18-CV-992, 2020 WL 998690, at *4 n.6 (M.D. Fla. Mar. 2, 2020) (emphasis added). The costs Plaintiffs seek to recover here are include the cost of repairing the damage insured property, including the structural backfill and foundation slab. The covered repairs include the cost to trench or "tear out" flooring and concrete to access the deteriorated plumbing system. Plaintiffs also seek to recover the cost to repaint walls and ceilings, to replace damaged and trenched floors, and the cost to tear out and repair cabinets. These costs are within the scope of the tear out coverage provided by Defendant's Policy.

### Argument

### Summary Judgment Standard

The summary judgment standard under Rule 56 is clear:

> [F]or ***issues on which the movant would bear the burden of proof at trial***, 'that party ***must show affirmatively the absence of a genuine issue of material fact***: it must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial.'

*Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993) (emphasis added); *see Nunez v.*

9

*Coloplast Corp.*, 461 F. Supp. 3d 1260, 1264 (S.D. Fla. 2020) (same). Significantly, the standard does not change the role of the trier of fact:

> The party seeking summary judgment must show that 'there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law.' ***We will not make credibility determinations or weigh the evidence*** because summary judgment is only proper where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.

*Jackson v. Blue Bird Corp.*, 792 Fed. Appx. 706, 709–10 (11th Cir. 2019) (emphasis added) (quoting *Frederick v. Sprint/United Mgmt. Co.*, 246 F.3d 1305, 1311 (11th Cir. 2001)).

Under an all-risk policy such as the Policy here, "***once the insured establishes a loss apparently within the terms of the policy***, the burden is upon the insurer to prove that the loss arose from a cause which is excepted." *Jones*, 235 So. 3d at 940 (emphasis added) (citation omitted). The *Jones* court described the burden at trial on an all-risk policy as follows:

> 1. The insured has the initial burden of proof to establish that ***the damage at issue occurred during a period in which the damaged property had insurance coverage***. ...

*Id.*, 235 So. 3d at 941 (emphasis added). As demonstrated above, Plaintiffs' home, including the foundation and structural backfill, were damage by water and sewage escaping from the home's failed plumbing system. As a result, the summary judgment "burden then shifts to the insurer to prove that the cause of the loss was excluded from coverage under the policy's terms." *Id*. Accordingly, the summary judgment burden is squarely on Defendant to "show affirmatively the absence of a genuine issue of material fact: it must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial." *Fitzpatrick*, 2 F.3d at 1115. Defendant has not and cannot meet this burden.

Defendant cannot avoid the Policy exception that provides coverage for water damage from the failed plumbing system. Instead, argues that there is no coverage for "land." It also

10

repeatedly ignores the Policy's express coverage for "Materials and supplies located on or next to the 'residence premises' used to construct, alter or repair the dwelling." No matter how hard Defendant tries, the Policy expressly covers the "engineered structural backfill" which is "a standard building practice to use engineered structural fill as a building component in order to support the plumbing" system. *See* Jaremko Depo at 81. The engineered structural backfill is not "land." It is a construction material used to build the home. There is no contrary evidence. And, of course, credibility determinations are not allowed on summary judgment.

Defendant's citation to *Homeowners Choice Prop. & Cas. v. Maspons*, 211 So. 3d 1067 (Fla. 3d DCA 2017), is also unavailing. In *Maspons* there was no evidence, only speculation of counsel, that water escaping from a failed plumbing system had caused damage to covered property. In contrast here, the record evidence establishes that the home's engineered structural backfill and foundation slab – both covered property – have been damaged by water from the failed plumbing system. There is no basis for summary judgment. Defendant's Motion should be denied.

## Conclusion

For the reasons discussed above, and based on the cited authorities, the Court should deny Defendant's motion for summary judgment.

Respectfully submitted,
RODRIGUEZ TRAMONT & NUÑEZ, P.A.

By:   s/ *Paulino A. Nuñez Jr.*
Paulino A. Nuñez Jr., Esq.
Florida Bar No. 814806
Frank R. Rodriguez
Florida Bar No.: 348988
Stephanie Therese Núñez
Florida Bar No.: 099588
255 Alhambra Circle, Suite 1150
Coral Gables, Florida 33134

Telephone: 305-350-2300
*Lead Counsel for Plaintiffs*
and

KNECHT LAW GROUP
658 W. Indiantown Rd., STE. 211
Jupiter, Florida 33458
Michael C. Knecht, Esq.
Florida Bar No.: 475815
mck@mikeknecht.com
*Co-Counsel for Plaintiffs*

## Certificate of Service

I HEREBY CERTIFY that on March 26, 2022, a true and correct copy of the foregoing was filed with the Clerk of Court using the CM/ECF system which will send a notification of the filing to all counsel and parties of record.

*s/ Paulino A. Núñez Jr.*
Paulino A. Núñez Jr., Esq.