UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO.: 9:21-cv-81972-RS

BRUCE W. BOCKELMANN AND JOAN L. BOCKELMANN

    Plaintiffs,

vs.

USAA CASUALTY INSURANCE COMPANY

    Defendant.
_____/

## DEFENDANT'S REPLY MEMORANDUM TO PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

COMES NOW, USAA CASUALTY INSURANCE COMPANY (hereinafter "USAA CIC"), by and through its undersigned counsel, and pursuant to Fed. R. Civ. P. 56, hereby files its Reply Memorandum to Plaintiffs' Memorandum in Opposition to Defendant's Motion for Summary Judgment, and states as follows:

### SUMMARY OF REPLY

The facts at bar in the instant matter simply do not support the existence of a covered loss under the Plaintiffs' homeowner insurance policy. The subject Policy is not an "all risk" policy; it is a "Sudden & Accidental" policy. Plaintiffs' Response simply ignores the endorsed lead-in paragraph, which requires the existence of a "sudden and accidental, direct physical loss to

Case 9:21-cv-81972-RS Document 47 Entered on FLSD Docket 04/12/2022 Page 2 of 9

Bockelmann, Bruce and Joan vs. USAA Casualty Insurance Company                    Case No.: 9:21-cv-81972-RS

tangible property." Plaintiffs have submitted no record evidence that a sudden and accidental loss occurred during the subject policy period.

Moreover, structural backfill is not covered under the Plaintiffs' policy, because this is part of the land on which the dwelling is located. Even so, Plaintiffs have not submitted any credible evidence that there even exists "engineered structural backfill" underneath the Plaintiffs' dwelling, but only relies upon the conjecture and speculation of their plumber, who admits he did not test the soil and could only confirm there was "sand" in the plumbing system. Such argument is an improper stacking of inferences.

Plaintiffs rely upon an undisclosed opinion of their plumber regarding alleged damage to the foundation, which was not disclosed in accordance with Rule 26(a)(2)(B) and is not part of the record on summary judgment. Even so, loss to an underground pipe; drain; or foundation is not covered due to a collapse of the pipe(s); such loss is only covered in the event of a collapse of the building.

**REBUTTAL ARGUMENTS**

**I.     There exists no evidence of a "sudden and accidental" loss.**

The entire record on summary judgment is void of any evidence of a loss which occurred suddenly and accidentally. This is the only type of loss covered by the Plaintiffs' insurance policy. Specifically, this Policy is endorsed with a 16-page FLORIDA SPECIAL PROVISIONS, form HO-FL (09-16) which states in bold capital letters at the top: **THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**.

Therein, found on page 5 of 16, SECTION I- LOSSES WE COVER in HO-3R: COVERAGE A – DWELLING PROTECTION COVERAGE AND COVERAGE B – OTHER

Case 9:21-cv-81972-RS   Document 47   Entered on FLSD Docket 04/12/2022   Page 3 of 9

Bockelmann, Bruce and Joan vs. USAA Casualty Insurance Company                Case No.: 9:21-cv-81972-RS

STRUCTURES PROTECTION COVERAGE, "The lead-in paragraph is deleted and replaced by the following:

> We insure against sudden and accidental, direct physical loss to tangible property described in PROPETY WE COVER – COVERAGES A and B unless excluded in SECTION I – LOSSES WE DO NOT COVER.

Plaintiffs cite to various cases in support of their allegation that this is an 'all risk' policy; however, the subject policy is not akin to the policies analyzed in those cases. The cases cited by Plaintiffs do not contain such lead-in language as is found here. *Jones v. Fed Nat'l Ins. Co.,* 235 So. 3d 936, 940 (Fla. 4th DCA 2018) (quoting lead-in language which stated, "[w]e insure against risk of direct loss to property described in Coverages A and B only if that loss is a physical loss to property."). The additional case of *Fayad* is likewise distinguishable. *Fayad v. Clarendon Nat. Ins. Co.,* 899 So. 2d 1082 (Fla. 2005). Neither such cases contain the phrase "sudden and accidental."

Plaintiffs have failed to put forth any record evidence to demonstrate *any* loss of a sudden and accidental nature. Plaintiffs' entire theory of loss rests on the deteriorated condition of a cast-iron plumbing system. Neither the Plaintiffs, nor any of their witnesses, have testified or opined about a sudden event, i.e. happening, coming, made, or done quickly, without warning, or unexpectedly. Merriam-Webster, *Sudden,* Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/dwelling (last visited April 12, 2022). Instead, Plaintiffs simply ignore this requirement of the Policy. In fact, Plaintiffs' own Memorandum in Opposition [D.E. 39] supports this was **not** a sudden and accidental event, wherein Plaintiffs describe "their home plumbing system has *repeatedly* suffered from bouts of slow draining;" "they became concerned about the *continued* plumbing problems." The ordinary meaning of the word "sudden" does not include repeated or continued events; instead, it's quite the opposite.

Case 9:21-cv-81972-RS   Document 47   Entered on FLSD Docket 04/12/2022   Page 4 of 9

Bockelmann, Bruce and Joan vs. USAA Casualty Insurance Company                Case No.: 9:21-cv-81972-RS

Thus, as there is no evidence that a sudden and accidental loss has occurred, this Court should find as a matter of law the Plaintiffs' claim does is so limited by the express coverage grant and does not fall within the scope of coverage under this policy.

**II.     Structural backfill is not covered because it is part of the Land on which the dwelling is located.**

Even assuming, as Plaintiffs assert, that the structural backfill has been damaged, same is not covered without a triggering event. The Policy describes what type of property is (and is not) covered under SECTION I – PROPERTY WE COVER for COVERAGE A- Dwelling Protection. There are (3) enumerated descriptions of what type of property is covered, which is then followed by a limitation that applies to the granting of coverage. Specifically, the Policy states on page 3-4 of 34:

> We cover:
>
> **1.** The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling;
>
> **2.** Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premise"; and
>
> **3.** Custom or permanently installed window treatments and permanently installed carpeting.
>
> Except as specifically provided in SECTION I – ADDITIONAL COVERAGES, Land, we do not cover land, including land on which the dwelling is located.

When turning to the Additional Coverages, beginning on page 7 of 24, Land is found on page 11 of 34 and the following provisions apply (lead-in paragraph is endorsed on page 3 of 16 of the Florida Special Provisions):

> **ADDITIONAL COVERAGES**
> Unless specifically addressed elsewhere in this policy, the coverages provided below are the only coverages provided for the following. The SECTION I – LOSSES WE DO NOT COVER apply to these coverages unless otherwise stated.
> \*\*\*

Case 9:21-cv-81972-RS   Document 47   Entered on FLSD Docket 04/12/2022   Page 5 of 9

Bockelmann, Bruce and Joan vs. USAA Casualty Insurance Company                Case No.: 9:21-cv-81972-RS

> 11. **Land.** If a loss covered under Section I – LOSSES WE COVER damages a building on the "residence premises" insured under Dwelling Protection or Other Structures Protection and the same loss causes the land necessary to support the building insured under Dwelling Protection or Other Structures Protection to become unstable, we will pay up to $10,000.00 for the cost required to replace, rebuild, stabilize or otherwise restore such land.

When the Policy is read as a whole, Land, including the land on which the dwelling is located, is not covered, unless something described under LOSSES WE COVER damages the building, which then causes the land that supports the building to become unstable. When read in further conjunction with the Additional Coverage upon which this limitation refers, it offers even more meaning to the phrase "Land," as it describes land necessary to support the building- i.e. that land which sits underneath the dwelling itself. It is unambiguously clear that "land on which the dwelling is located" includes the land upon which the dwelling is physically located upon and that provides the support from the underside of the building. This type of structural backfill (or any other items utilized to support the building) is not covered land, <u>unless</u> a covered loss damages the building in such a way that makes the land become unstable (examples may include a lightning strike; fire; complete building collapse; or an explosion).

Therefore, even if one were to assume the Plaintiffs had structural backfill located underneath the dwelling, and even if one were to assume said structural backfill was damaged by leaky pipes, this would not be covered as it is the Land upon which the dwelling is located, which is expressly limited by the description of PROPERTY WE COVER. Put simply, this land is not covered, absent the application of the Additional Coverage, which would not apply as there is no evidence the supporting land is unstable. Here, there is no evidence of damage to the building and there is no evidence that the Land is unstable.

If the Court were to accept Plaintiffs' arguments, which effectively argue that the land on which the dwelling is located does not include the land where the dwelling sits upon, then such

Case 9:21-cv-81972-RS Document 47 Entered on FLSD Docket 04/12/2022 Page 6 of 9

Bockelmann, Bruce and Joan vs. USAA Casualty Insurance Company    Case No.: 9:21-cv-81972-RS

an interpretation would effectively eviscerate this plain and unambiguous limitation of the policy's coverage.

### III. There is no competent evidence to indicate that the Plaintiffs have "engineered structural backfill."

Plaintiffs' claim of the mere existence of structural backfill underneath the slab of the dwelling is mere conjecture and speculation. Such a belief is only derived through the improper stacking of inferences- so much so that Mr. Jaremko would have to infer this engineered material were needed when Plaintiffs' home was built; Mr. Jaremko would then have to infer that the structural engineer and/or developer made the selection of this engineered structural backfill; Mr. Jaremko would then have to infer that the engineered structural backfill was purchased; trucked; delivered; and spread across the Plaintiffs' specific plat of land; Mr. Jaremko would have to infer engineered structural backfill was actually sitting underneath the Plaintiffs' home; and then Mr. Jaremko would have to infer the engineered structural backfill actually was polluted by sewage water escaping the pipes.

During his deposition, Mr. Jaremko testified at deposition to the following:

> Q. When you say structural backfill, are you referring to what you're referencing as sand in the pipe?
> A. Yes.
> Q. That's the backfill?
> A. Yes, ma'am.
> Q. Do you have any indication that sand was used to backfill the Bockelmann property?
> A. It's a standard building practice to use engineered structural fill as a building component in order to support the plumbing and also to support the slack.
> Q. Do you have any evidence to indicate that sand was utilized as the structural backfill for the Bockelmann property?
> A. Other than what I can see in the videos of sand inside the plumbing, that is my indicator that that's what they used.

*See* [D.E. 38-2], Vol. 2 Deposition of Edward Jaremko, P.80-81, L.24-14.

> Q. Did you take any samples of the structural backfill?
> A. No.
> Q. Have you ever done that?
> A. Yes.

Case 9:21-cv-81972-RS   Document 47   Entered on FLSD Docket 04/12/2022   Page 7 of 9

Bockelmann, Bruce and Joan vs. USAA Casualty Insurance Company          Case No.: 9:21-cv-81972-RS

> Q. Why did you not do it in this case?
> A. Because it requires destructive testing. You have to open the slab to get to get at it.
>
> See [D.E. 38-2], Vol. 2 Deposition of Edward Jaremko, P.99, L.10-17.

Although Mr. Jaremko has taken samples of the structural backfill in other matters, he did not do so at the Plaintiffs' residence. The only thing Mr. Jaremko can actually confirm is that there is "sand." He cannot actually confirm the type of soil that rests below the Plaintiffs' dwelling. Thus, his testimony that he found sand in the pipe(s) and then calling it "structural backfill" requires an improper stacking of inferences and the resulting opinion as to what this "sand" material actual consists of is mere conjecture. Thus, the Plaintiffs cannot utilize Mr. Jaremko to demonstrate on summary judgment that there even exists any type of construction material (such as engineered structural backfill) at the Bockelmann residence, as he never tested or confirmed the composition of the materials.

### IV. There is no admissible evidence regarding damage to the foundation/slab.

Plaintiffs attempt to improperly assert that Mr. Jaremko's opinions include the existence of damage to the concrete slab/foundation. However, these opinions are not contained within Mr. Jaremko's report [see D.E. 38-3]. The Report merely references, generally, the general issues that may result from failed cast iron pipes. The Report is silent as to whether there is any damage to the slab <u>in this case</u>. Therefore, there exists no record evidence on summary judgment, as such opinions regarding *damage to the foundation* were not included in Mr. Jaremko's report as required by Rule 26(a)(2)(B), and same should not be considered by this Court to defeat summary judgment. Even so, the Defendant rests upon its initial arguments that such damage(s) would not be covered by the subject policy.

Case 9:21-cv-81972-RS   Document 47   Entered on FLSD Docket 04/12/2022   Page 8 of 9

Bockelmann, Bruce and Joan vs. USAA Casualty Insurance Company                    Case No.: 9:21-cv-81972-RS

### V.     Public Policy supports the policy language.

The subject residential homeowners' policy is not a maintenance contract; it is not an extended home warranty; and it is not designed to cover aging building components. This is a sudden accidental policy that covers the PROPERTY described for those LOSSES defined therein, subject to various limitations and exclusions. If this Court were to entertain the creative play on semantics in which the Plaintiffs try to garner coverage, for a loss that has never even happened nonetheless, this would open the flood gates for every insured in this State to garner coverage to trench through their concrete floors simply to access a deteriorated and aged plumbing system.

There has been no physical damage incurred at the Plaintiffs' residence; there has been no back up of water; no damage to their dwelling whatsoever. Their claim for coverage rests solely on a grave interpretation of policy language, which requires the Court to ignore the simple limitations that apply to this claim for damages.

The State of Florida is in a dire state of crisis, with a shrinking market of options available to homeowners to insure their homes. Policies must be afforded their plain and ordinary meanings and the simple limitations they contain need be enforced in order to prevent a slippery slope of encouraging baseless litigation in an overly burdened court system.

**WHEREFORE,** Defendant, USAA CASUALTY INSURANCE COMPANY, respectfully requests this Honorable Court grant its Motion for Final Summary Judgment, enter final summary judgment in Defendant's favor for the reasons set forth herein, and for all other relief this Court deems just and proper.

Bockelmann, Bruce and Joan vs. USAA Casualty Insurance Company                Case No.: 9:21-cv-81972-RS

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing Motion has been furnished electronically this 12th day of April, 2022, to: Michael C. Knecht, Esquire, Knecht Law Group, 658 W. Indiantown Rd., Ste. 211, Jupiter, FL 33458; mck@mikeknecht.com; susan@mikeknecht.com; Christopher Keller, Esquire, Keller, Melchiorre & Walsh, PLLC, 3900 Military Trail, Ste. 600, Jupiter, FL 33458; Chris@kmwlegal.com; pleadings@kmwlegal.com; Frank R. Rodriguez, Esq., Paul M. Nunez, Esq., Rodriguez Tramont & Nunez, P.A, 255 Alhambra Circle, Suite 1150, Coral Gables, FL 33134, frr@rtgn-law.com; pan@rtgn-law.com; stn@rtgn-law.com; pmn@rtgn-law.com

        VERNIS & BOWLING OF PALM BEACH, P.A.
        618 U.S. Highway One
        North Palm Beach, Florida 33408
        Telephone: (561) 775-9822
        Fax: (561) 775-9821
        Attorney for Defendant, *USAA Casualty Insurance Company*

        By: __*/s/ Lauren Maione-Walsh*____
          Lauren Maione-Walsh, Esq.
          Florida Bar No.: 0072122
          LWalsh@florida-law.com
          PBFiling@florida-law.com